IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK 10-80880-TJM |
| | ) | |
| J.B. CONSTRUCTION COMPANY, INC., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

ORDER

Hearing was held in Omaha, Nebraska, on February 7, 2011, regarding Filing #127, Motion for Relief from Stay, filed by AMCO Insurance Company; Filing #134, Resistance, filed by Pinnacle Bank; and Filing #135, Resistance, filed by the debtor. David Hicks appeared for the Debtor, Scott Leo and T. Randall Wright appeared for AMCO Insurance Company, and Thomas Ostdiek appeared for Pinnacle Bank.

AMCO Insurance Company ("AMCO") has requested relief from the automatic stay to permit AMCO to take possession and control of property, that is, retainage amounts held by two hospitals under construction contracts entered into by those hospitals and the debtor. The motion for relief is granted.

The debtor is a construction company generally involved in cement and concrete work for commercial projects. In two of the projects, the Bergan Mercy Medical Center project and the Midlands Hospital project, the debtor was required to post bonds to protect the hospitals from any liens filed by the suppliers of labor or material. AMCO issued such bonds and when demand was made upon AMCO to pay contractual amounts represented by liens filed by a material supplier, AMCO paid the debts represented by the liens.

Each hospital had retained a portion of the contract payments to protect itself from any labor or material claims. Those retainage amounts still remain and are the subject of the dispute between the debtor, AMCO, and the debtor's lender, Pinnacle Bank. The debtor and the lender suggest that the retainage amounts represent accounts receivable in which the lender has a perfected security interest superior in priority to any claim advanced by AMCO.

AMCO received claims against the bonds in the amount of $101,228.65 on the Bergan Mercy Medical Center project and in the amount of $36,405.80 on the Midlands Hospital project. AMCO paid the claims in full. The Bergan Mercy project has a remaining contract balance of at least $54,653.90 and the Midlands Hospital project has a remaining contract balance of at least $4,389.70.

As surety, AMCO claims it is equitably subrogated to the rights of the material supplier claimants because it satisfied those claims and is therefore entitled to the contract balances remaining on each project. It desires relief in order to allow it to take action to recover the remaining contract balances on the two projects.

The bank's position is that it entered into a loan agreement and a Uniform Commercial Code security agreement prior to the execution of the bonds in question. As part of its collateral, it has a perfected security interest in contract rights and accounts receivable. As of the date of the hearing, it was still owed approximately $72,000. Because of its perfection of its security interest in the accounts receivable and contract rights, it claims priority over any claim against the retainage by AMCO.

Historically, the rule has been that if a surety, such as AMCO, pays the construction claimants, it is equitably subrogated to the interest of those claimants, and to the interest of the owner of the project with regard to any of its rights, including setoff. Prairie State Bank v. United States, 164 U.S. 227 (1896); Henningsen v. U. S. Fid. & Guar. Co., 208 U.S. 404 (1908); Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962); Maryland Cas. Co. v. Lincoln Bank & Trust Co., 40 F. Supp. 782 (W.D. Ky. 1941); First Nat'l Bank of Auburn v. Pesha, 157 N.W. 924 (Neb. 1916); Indemnity Ins. Co. of N. Am. v. Lane Contracting Corp., 227 F. Supp. 143 (D. Neb. 1964).

The above-cited cases all indicate that the long-standing general rule is that the surety that makes payment on claims against the construction project is equitably subrogated to the rights of the contractor to receive any contract retainage and is equitably subordinated to the owner which had rights of setoff and other rights vis-à-vis the contractor and the claimants. The Pearlman case tends to receive special mention in the literature because it arose in the bankruptcy context. It expressly reaffirmed the holdings of Prairie State Bank and Henningsen that sureties hold superior rights to retainage funds and it clarified that ownership of the funds never passed to the debtor or into the bankruptcy estate.

However, all of these cases predate the Uniform Commercial Code and do not discuss the issue of priority between the surety and a lender to the contractor which has a perfected security interest in the contract rights or accounts receivable. There do exist such cases and they, as well as treatises such as Restatement (Third) of Suretyship and Guaranty § 30 and 4 James J. White & Robert S. Summers, Uniform Commercial Code, § 30-6 (6th ed.), basically agree that

> [s]ince the surety's claim is not based on a security interest, Article 9 does not apply. Article 9 applies only to consensual security interests. The surety's subrogation claim is not consensual, but is based on the "status . . . inhering in a surety." Accordingly, conflicts between the rights of the surety and third parties must be resolved outside Article 9. And outside Article 9, sureties generally prevail over banks with perfected Article 9 security interests in money retained by the owner.

4 White & Summers, Uniform Commercial Code at 51 (footnotes omitted).

The Restatement discusses U.S. Fid. & Guar. Co. v. APAC-Kansas, Inc., 151 F. Supp. 2d 1297 (D. Kan. 2001), which determined that a surety's right of equitable subrogation is not dependent on filing under the U.C.C. and that the date of perfection of a competing security interest vis-à-vis the execution of the surety bond is not controlling, as the surety's interest takes precedence regardless of whether it predated the security interest. Because the case is directly on point regarding the legal question here, it is appropriate to quote some of its passages:

> Although in the majority of federal, Kansas, and Missouri cases cited for the proposition that the surety has priority to retainage funds based on equitable subrogation, the execution of the surety bond did predate the bank's security interest, the court does not find that fact controlling. The United States Supreme Court has stated the doctrine's requirements as "(1) that the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior

> mortgagees, etc." Prairie State National Bank, 164 U.S. at 231, 17 S. Ct. 142 (citing Insurance Co. v. Middleport, 124 U.S. 534, 8 S. Ct. 625, 31 L. Ed. 537 (1888)). [The contractor] has not cited, nor has this court found, any authority requiring that the surety's interest predate another creditor's interest for the doctrine of equitable subrogation to control.

151 F. Supp. 2d. at 1300.

Moreover, "[n]ot a single reported decision gives priority to the Article 9 financer in its battle with the surety for the retainage fund. It makes no difference whether the surety files a financing statement or if the surety bonds are executed before the financer's security interest is perfected." Id. at 1300-01 (quoting Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 1.07 at 1-84 through 1-89 (rev. ed. 1993)). "Without subrogation, the bank probably would prevail over the surety, at least if it were the first party to perfect a security interest. . . . With a right of subrogation, however, the surety can climb ahead of the bank by asserting the owner's right to damages for breach of contract." Id. at 1301 (quoting Steven Walt & Emily L. Sherwin, Contribution Arguments in Commercial Law, 42 Emory L.J. 897, 905-912).

The court concluded that "[n]otwithstanding the chronology of execution of the surety bonds in relation to a bank's security interest in a contractor's accounts, upon default, the surety 'steps into the shoes' of the owner, while the bank's rights do not attach until the funds reach the contractor, giving priority to the surety." 151 F. Supp. 2d at 1301 (citing, inter alia, Prairie State Bank, Henningsen, and Pearlman).

The Kansas court also pointed out that most lenders to contractors are aware that a surety is or should be involved, particularly where state law requires payment and completion bonds, so the lender takes its security interest in future contract accounts receivable with constructive notice of the surety bond and at its own peril. Id.

White & Summers explained that conflicts between the rights of sureties and the rights of third parties must be resolved outside of Article 9, where sureties generally prevail over banks with perfected Article 9 security interests. See, e.g., John G. Lambros Co. v. Aetna Cas. & Sur. Co., 468 F. Supp. 624 (S.D.N.Y. 1979) and Centex-Simpson Constr. Co. v. Fid. & Deposit Co. of Maryland, 795 F. Supp. 35 (D. Me. 1992). In the Lambros case, the surety company agreed to advance funds to the contractor so he could complete the projects, and it took a security interest in return. An unsecured creditor filed suit to try to recover money he was owed, but the court granted summary judgment to the surety, pointing out that not only did the surety have superior rights to all payments due under the construction contract by virtue of equitable subrogation, but the surety also had a valid security interest in those assets, which also would be superior to an unsecured creditor.

In the Centex case, the dispute was between the surety and the FDIC (for a lender whose security interest predated the surety bond) over their respective rights to earned but unpaid contract funds on a federal project. The court said the surety's rights were paramount under the doctrine of equitable subrogation. Moreover, because the subcontractor never finished the job, the funds never became his property, so the lender's security interest never attached to them.

Based upon the above-cited authorities, AMCO's subrogation rights are superior to the rights of Pinnacle Bank under its security interest and to the right of payment provided in the contracts for the debtor. AMCO has the right to the retainage amounts and relief is granted to permit AMCO to enforce that right.

      IT IS ORDERED: AMCO Insurance Company's motion for relief from stay (Fil. No. 127) is granted.

    DATED:      March 4, 2011

                                                      BY THE COURT:

                                                      <u>Timothy J. Mahoney</u>
                                                      United States Bankruptcy Judge

Notice given by the Court to:
   David Hicks
   *Scott Leo
   *T. Randall Wright
   Thomas Ostdiek
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.